# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20-cr-20034-JPM-tmp |
| | ) | |
| ALFONZO MITCHELL, | ) | |
| | ) | |
| Defendant. | ) | |

_____

### REPORT AND RECOMMENDATION
_____

Before the court by order of reference is a motion to suppress evidence filed by defendant Alfonzo Mitchell on March 16, 2020. (ECF Nos. 28 & 29.) The government filed a response on March 30, 2020. (ECF No. 30.) For the reasons below, it is recommended that the motion to suppress be denied.

## I. PROPOSED FINDINGS OF FACT

The following proposed findings of fact are based on the testimony of Memphis Police Department ("MPD") Detective Christopher Kent, Detective Joshua Redding, and Officer Emmanuel Ufeu, all three of whom credibly testified at the evidentiary hearing held on August 26, 2020. (ECF No. 51.)

In 2018, a confidential informant contacted detectives to tell them that Alfonzo Mitchell and his brother, Alonzo Mitchell,

were storing and selling narcotics, including crack cocaine, at their house located at 1355 Busby Avenue in Memphis, Tennessee. To corroborate this information, Detective Kent performed surveillance on the house, during which he observed vehicle traffic consistent with narcotics sales. Detective Kent completed an affidavit for a search warrant for the Busby Avenue address and presented it to a judicial commissioner on November 9, 2018. Detective Kent's affidavit stated, in relevant part, as follows:

> The reliable confidential informant is responsible for two reliability buys of illegal narcotics.[1] The reliable confidential informant provided information about locations that are selling illegal narcotics, and your affiant corroborated the information through an investigation.
>
> The reliable confidential informant provided your affiant with information that crack cocaine, marijuana, and powder cocaine is being stored and sold out of 1355 Busby Ave, Memphis TN 38127, by a male black, medium complexion, 203lbs, 5'8, 46 years old Alonzo Mitchell and a male black, medium complexion, 230lbs, 5'11, 46 years old Alfonzo Mitchell aka "Al". The reliable confidential informant has observed marijuana, crack cocaine, and cocaine inside of 1355 Busby Ave, Memphis TN 38127, within the past (5) days.
>
> Detective Kent conducted a computer investigation, on the Memphis Police Department databases and 1355 Busby Ave, Memphis TN 38127, which shows that Alonzo Mitchell and Alfonzo Mitchell both reside at this address. The

---

[1] Reliability buys are an investigative practice where the police establish that a confidential informant is reliable by having that informant engage in undercover purchases of narcotics. The confidential informant in this case conducted two reliability buys of narcotics from other individuals prior to the Mitchell investigation.

confidential and reliable informant was shown a TIES DL
photo of Alonzo Mitchell and Alfonzo Mitchell and
positively identified them as the people selling and
storing crack cocaine, marijuana, and powder cocaine at
1355 Busby Ave, Memphis TN 38127. Alonzo Mitchell has
several previous narcotics arrests and convictions
including the charge of Manuf/Del/Sell Cocaine in
Memphis, Shelby County. Alfonzo Mitchell has previous
felony narcotics indictments for Manuf/Del/Sell in
Memphis, Shelby County.

Your affiant conducted surveillance on this location on
multiple occasions. He observed multiple vehicles pull
into the driveway of 1355 Busby, one or more of the
occupants exited the vehicle, entered the house, stayed
inside for less than 15 minutes, and then got back into
the vehicles, and left. Your affiant knows from training
and experience that this activity is consistent with
narcotic sales.

(Search Warrant Affidavit, Hr'g Ex. 1.)[2]

After obtaining the judicial commissioner's signature,
Detective Kent and other members of the MPD organized crime unit
executed the search warrant. Alfonzo Mitchell was in the residence
during the execution of the search warrant, during which the
officers seized powder and crack cocaine, marijuana, pills, and

---

[2]Detective Kent's affidavit included information about his law
enforcement background and specialized training regarding
narcotics investigations. He wrote in his affidavit that "[h]e
observed multiple vehicles pull into the driveway of 1355 Busby,
one or more of the occupants exited the vehicle, entered the house,
stayed inside for less than 15 minutes, and then got back into the
vehicles, and left." (Hr'g Ex. 1.) He further wrote that based on
his "training and experience," he knew this activity to be
"consistent with narcotics sales." (Id.)

multiple firearms. Officers left a copy of the search warrant at the residence.

Officers then transported Alfonzo Mitchell to the MPD office at 51 South Flicker Street. Upon arrival, Mitchell filled out an "Advice of Rights" form, which is dated November 9, 2018, at 7:30 P.M. (Advice of Rights Form, Hr'g Ex. 9.) This form states as follows:

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have a right to talk to a lawyer for advice before we ask you any questions.
>
> You have a right to have a lawyer with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering questions at any time.

(Id.) Alfonzo Mitchell placed his initials at the end of each line. (Id.) The form then has a section titled "Waiver of Rights," which states as follows:

> "I have read this statement of my rights and I understand what my rights are. No promises or threats have been made to me and no pressure, force, or coercion of any kind has been used against me. At this time, I am ready to answer questions without a lawyer present."

- 4 -

(Id.) Alfonzo Mitchell placed his signature on this portion of the page, as well. (Id.) Mitchell also verbally confirmed to Detective Redding that he understood his rights.

After Mitchell signed the "Advice of Rights" form, officers were informed that they had not retrieved all of the contraband at the Busby Avenue address during their search. Detective Redding and another officer returned to the residence with Alfonzo Mitchell, who consented for the officers to enter the house and recover the evidence they believed to be inside. After the officers determined that they had not left any contraband at the residence, Mitchell was transported back to the MPD office.

Upon returning to the MPD office, Detective Redding again advised Mitchell of his rights. Mitchell received a "Rights Waiver Form," which contained the same language and statement of rights as the "Advice of Rights" form quoted above. (Rights Waiver Form, Hr'g Ex. 11.) Again, Mitchell placed his initials at the end of each line acknowledging his rights, and placed his signature after the "Waiver of Rights" section. (Id.) Mitchell also verbally confirmed to Detective Redding that he understood his rights.

Detective Redding then conducted a verbal interview of Alfonzo Mitchell, which Officer Ufeu observed as a witness. The contents of the interview were captured in a typed "Defendant

Statement," which Detective Redding prepared after questioning Mitchell. (Defendant Statement, Hr'g Ex. 12.) The typed statement began with Detective Redding informing Mitchell that he was under arrest, reading Mitchell his rights, and asking Mitchell if he understood each of the rights as explained to him. (Id.) Mitchell answered in the affirmative. (Id.) The statement ended with the following discussion between Redding ("Q") and Mitchell ("A"):

> Q: Can you read and write without the aid of eyeglasses?
> A: Yes sir.
>
> Q: Did you give this statement of your own free will, without threats, promises, or coercion from anyone?
> A: Yes sir.
>
> Q: How were you treated by officers today?
> A: [Y]ou all were fair and treated me well.
>
> Q: I will ask you to read this statement and if you find it to be exactly as you have given then I will ask you to initial at the bottom of each page and sign on the line below. Do you understand?
> A: Yes sir[.]

(Id. at 4.) Alfonzo Mitchell placed his initials at the bottom of each page and signed the last page of the statement at 10:53 P.M. on November 9, 2018. (Id.)

A federal grand jury in the Western District of Tennessee returned an eight-count indictment against Mitchell on January 30, 2020, charging him with violations of 21 U.S.C. § 841(a)(1), 18 U.S.C. § 924(c), and 18 U.S.C. § 922(g)(1). (ECF No. 1.)

## II.  PROPOSED CONCLUSIONS OF LAW

## A.    Probable Cause

Mitchell first argues that the search warrant for the Busby Avenue address was not supported by probable cause. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "The standard of review for the sufficiency of an affidavit is whether the magistrate [or judicial commissioner] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." United States v. Johnson, 351 F.3d 254, 258 (6th Cir. 2003) (internal quotation marks omitted). "The job of the magistrate judge [or judicial commissioner] presented with a search warrant application is 'simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Brown, 828 F.3d 375, 381 (6th Cir. 2016) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." Id.

(quoting <u>United States v. Berry</u>, 565 F.3d 332, 338 (6th Cir. 2009)).

In this case, the undersigned submits the information presented in the four corners of the affidavit provided sufficient probable cause for the search warrant. Detective Kent's affidavit adequately established the reliability of the confidential informant, who was previously responsible for two reliability buys of illegal narcotics. The confidential informant provided information to Detective Kent that Alfonzo Mitchell and Alonzo Mitchell were storing and selling crack cocaine, marijuana, and powder cocaine at their residence located at 1355 Busby Avenue. The confidential informant observed marijuana, crack cocaine, and powder cocaine located in the residence within five days of Detective Kent's affidavit.

Detective Kent corroborated the confidential informant's information with an independent investigation of the residence, including a search of the MPD computer databases, which demonstrated that Alfonzo Mitchell and Alonzo Mitchell resided at 1355 Busby Avenue. The confidential informant positively identified Alfonzo Mitchell and Alonzo Mitchell from photographs as the two individuals selling and storing narcotics at the Busby Avenue residence. The database search also returned reports that Alonzo Mitchell had several previous narcotics arrests and

convictions, and that Alfonzo Mitchell had previous felony narcotics indictments in Memphis. Detective Kent also performed surveillance of the Busby Avenue residence and observed activity consistent with narcotic sales. See United States v. Stotts, 176 F.3d 880, 885 (6th Cir. 1999) ("A judicial officer may rely on an experienced officer's conclusions based on the nature of the evidence and type of offense."). This information provided sufficient probable cause in support of the search warrant. See United States v. Jones, 159 F.3d 969, 974 (6th Cir. 1998) ("Knowledge of illegal drug activities, obtained by law enforcement officials through a confidential informant and independent surveillance, supports a district court's finding of probable cause to support the issuance of a warrant.").

Moreover, even absent probable cause, the good-faith exception applies. In United States v. Leon, the Supreme Court created an exception to the exclusionary rule for evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." 468 U.S. 897, 905 (1984). "Following Leon, courts presented with a motion to suppress claiming a lack of probable cause must ask 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.'" United States v. White, 874 F.3d 490, 496 (6th Cir. 2017) (quoting United States v. Hodson,

543 F.3d 286, 293 (6th Cir. 2008)). "Only when the answer is 'yes' is suppression appropriate." Id.

One circumstance in which an officer's reliance would not be objectively reasonable is "when the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Id. (quoting Leon, 468 U.S. at 923). "An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a 'bare bones' affidavit." Id. (citing United States v. Weaver, 99 F.3d 1372, 1380 (6th Cir. 1996)). "A bare-bones affidavit, in turn, is commonly defined as one that states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" Id. (quoting United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005)). "Put more simply, a bare-bones affidavit is a conclusory affidavit, one that asserts 'only the affiant's belief that probable cause existed.'" Id. (quoting United States v. Williams, 224 F.3d 530, 533 (6th Cir. 2000)). "In contrast, an affidavit is not bare bones if, although falling short of the probable-cause standard, it contains 'a minimally sufficient nexus between the illegal activity and the place to be searched.'" Id. at 496-97 (quoting United States v. Carpenter, 360 F.3d 591, 595-96 (6th Cir. 2004)). For the same reasons discussed

in the probable cause analysis above, Detective Kent's affidavit easily surpasses the "bare bones" standard. Accordingly, the undersigned submits that the affidavit is supported by probable cause and that, even without probable cause, the motion to suppress should be denied because the good-faith exception applies.

## B.   **_Miranda_ Rights**

Mitchell also argues that detectives did not advise him of his _Miranda_ rights before interrogating him. (ECF No. 28, at 7.) The Fifth Amendment guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In light of this protection, "the Supreme Court [has] held that this amendment requires law enforcement to advise a suspect before custodial interrogation that the suspect 'has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" United States v. Villa-Castaneda, 755 F. App'x 511, 515 (6th Cir. 2018) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)).

"A suspect may waive these rights, but a waiver 'must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege[.]'" Id. (quoting Edwards v. Arizona, 451 U.S. 477, 482 (1981)). "A waiver is valid '[o]nly if the 'totality of the

circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension[.]'" Id. at 516 (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). "Both the voluntariness and comprehension aspects of the waiver inquiry should be examined 'primarily from the perspective of the police,' such that where '[the] police had no reason to believe that [the defendant] misunderstood the warnings, . . . there is no basis for invalidating [the] Miranda waiver.'" United States v. Al-Cholan, 610 F.3d 945, 954 (6th Cir. 2010) (quoting Garner v. Mitchell, 557 F.3d 257, 263 (6th Cir. 2009)).

Mitchell argues that after he was transported by law enforcement to the MPD office, he was "handcuffed, unable to leave, and was not allowed to have counsel present." (ECF No. 28, at 3.) Moreover, Mitchell asserts that he was "interrogated for hours by law enforcement professionals despite having neither been informed of his rights under Miranda[,] nor giving a knowing and intelligent waiver of those rights." (Id.) "Upon being questioned, and without being advised of his rights pursuant to Miranda, Mr. Mitchell allegedly admitted to possession of the contraband in question." (Id. at 7.) While Mitchell acknowledges that he signed a "Rights Waiver Form," he asserts that he was "unaware of any statement of his rights and was unable to understand the form." (Id.)

Detective Redding testified credibly at the suppression hearing as to the manner in which he obtained the "Advice of Rights" form (Hr'g Ex. 9), the "Rights Waiver Form" (Hr'g Ex. 11), and the "Defendant Statement" (Hr'g Ex. 12).[3] This testimony established that Mitchell was advised of his <u>Miranda</u> rights several times prior to questioning. Moreover, the government has presented sufficient evidence to establish that Mitchell's waiver of his <u>Miranda</u> rights was voluntary and constituted "a knowing and intelligent relinquishment" of those rights. <u>See</u> <u>Edwards</u>, 451 U.S. at 482. There is no evidence of any coercion in obtaining the waiver, and there is nothing in the record to suggest that Mitchell gave law enforcement officers any reason to believe he lacked the requisite level of comprehension. <u>See</u> <u>Villa-Castaneda</u>, 755 F. App'x at 516. Accordingly, it is recommended that the motion to suppress Mitchell's statement be denied.

### III.  RECOMMENDATION

Based on the foregoing analysis, it is recommended that the motion to suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

---

[3]Officer Ufeu also testified credibly at the suppression hearing as to the manner in which the "Defendant Statement" was obtained. (Hr'g Ex. 12.)

September 18, 2020
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**