**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>ALFONZO MITCHELL,  )<br>  )<br>    Defendant.  ) | Case No. 2:20-cr-20034-JPM-1 |

**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the Court is the Report and Recommendation of the Magistrate Judge entered on September 18, 2020. (ECF No. 56.) The Magistrate Judge recommends that the Court deny Defendant Alfonzo Mitchell's Motion to Suppress Evidence. (See ECF No. 28.) Mitchell filed a timely objection to the Magistrate Judge's Report on October 2, 2020. (ECF No. 58.)

Upon de novo review, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge and finds that the search warrant at issue in the case was supported by probable cause and that Mitchell's waiver of his Miranda rights was voluntary, knowing and intelligent. Accordingly, Mitchell's Motion to Suppress Evidence is **DENIED**.

**I.    BACKGROUND**

On January 30, 2020, a grand jury indicted Mitchell on four counts of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1), two counts of possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C.

924(c) and two counts of possessing a firearm as a felon in violation of 18 U.S.C. 922(g)(1). (ECF No. 1.)

On March 16, 2020, Mitchell filed the instant Motion to Suppress Evidence. (ECF No. 28.) Mitchell "moves to suppress evidence seized during and after an arrest, interrogation, and the service of a defective search warrant." (Id. at PageID 54.) Mitchell asserts that there was insufficient probable cause to issue the arrest warrant for Mitchell and the search warrant for his residence at 1355 Busby Avenue in Memphis, TN ("1355 Busby"). (Id. at PageID 57.) Mitchell also asserts that statements Mitchell made after his arrest must be suppressed because his rights under the Fifth Amendment were violated because he was questioned in a coercive environment "without being advised of his rights pursuant to Miranda." (Id. at PageID 60.)

The United States of America ("the Government") filed its Response on March 30, 2020, arguing (1) that there was sufficient probable cause for the arrest and search warrants; (2) that even if there was insufficient probable cause, the good faith exception applies and the evidence should not be suppressed; and (3) that Mitchell made a voluntary, knowing and intelligent waiver of his Miranda rights. (See ECF No. 30.)

A Hearing on Mitchell's Motion was held on August 26, 2020. (ECF No. 51.) At the Hearing, Memphis Police Department ("MPD") Detectives Christopher Kent and Joshua Redding and MPD Officer Emmanuel Ufeu testified. (Id.) On September 18, 2020, Magistrate Judge Pham entered his Report and Recommendation, recommending that this Court deny Mitchell's Motion. (ECF No. 56.) Mitchell filed his objections to the Report on October 2, 2020. (ECF No. 58.) The Government does not object to the Magistrate Judge's recommendations. (ECF No. 59.)

## II. LEGAL STANDARD

*A. Standard of Review*

"Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee note.

When a timely objection has been filed, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The portions of a magistrate judge's recommendation as to which no specific objections were filed are reviewed for clear error. See Fed. R. Civ. P. 72(b) advisory committee notes; Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991) (noting that when a party makes a general objection, "[t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless."). "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." Howard, 932 F.2d at 509. Moreover, the "failure to properly file objections constitutes a waiver of appeal." See Howard, 932 F.2d at 508 (citing United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

*B. Probable Cause*

The Fourth Amendment to the United States Constitution guarantees that one's right "against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The United States Court of Appeals for the Sixth Circuit has defined probable cause as "reasonable grounds for belief, supported by

3

less than prima facie proof but more than mere suspicion… that contraband or evidence of a crime will be found in a particular place." United States v. Stubblefield, 682 F.3d 502, 507 (6th Cir. 2012) (quoting United States v. Howard, 621 F.3d 433, 453 (6th Cir. 2010)) (internal quotation marks omitted). Furthermore, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Ranke, 480 F. App'x 798, 801 (6th Cir. 2012) (quoting Illinois v. Gates, 462 U.S. 213, 244 n. 13 (1983)).

When determining whether probable cause exists to support a search warrant, the court asks whether, "given all the circumstances set forth in the affidavit… there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Bass, 785 F.3d 1043, 1049 (6th Cir. 2015) (quoting Gates, 462 U.S. at 238). "[T]he affidavit must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." Id. (quoting Ellison v. Balinski, 625 F.3d 953, 958 (6th Cir. 2010) (citation omitted)).

"[A] judicial officer may rely on hearsay evidence" to establish probable cause. United States v. Helton, 314 F.3d 812, 819 (6th Cir. 2003) (citing United States v. Smith, 182 F.3d 473, 477 (6th Cir. 1999)). When hearsay information from a confidential informant forms part of the basis for a search warrant, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information." Id.

If probable cause to support a warrant is absent, evidence "seized in reasonable, good-faith reliance" on the warrant may still be admitted. United States v. Leon, 468 U.S. 897, 905

(1984). "[C]ourts presented with a motion to suppress claiming a lack of probable cause must ask 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." United States v. White, 874 F.3d 490, 496 (6th Cir. 2017) (quoting United States v. Hodson, 543 F.3d 286, 293 (6th Cir. 2008)).

One circumstance in which an officer's reliance would not be objectively reasonable is "when the affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" White, 874 F.3d at 496 (quoting Leon, 468 U.S. at 923). Such an affidavit is known as a "bare bones" affidavit, one that "states only 'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" Id. (quoting United States v. Laughton, 409 F.3d 744, 748 (6th Cir. 2005)). An affidavit that contains "a minimally sufficient nexus between the illegal activity and the place to be searched" is not bare bones. Id. (quoting United States v. Carpenter, 360 F.3d 591, 595–96 (6th Cir. 2004)). Rather, a bare bones affidavit is one that is conclusory and asserts "only the affiant's belief that probable cause existed." Id. (quoting United States v. Williams, 224 F.3d 530, 533 (6th Cir. 2000)).

C. *Miranda Rights*

The Fifth Amendment guarantees that "no person… shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In light of this protection, "the Supreme Court [has] held that this amendment requires law enforcement to advise a suspect before a custodial interrogation that the suspect 'has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." United States v. Villa-Castaneda,

755 F. App'x 511, 515 (6th Cir. 2018) (quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966)).

A suspect may elect to waive his Fifth Amendment rights if the waiver is made "voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. "A waiver is valid '[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension[.]'" Villa-Castaneda, 744 F. App'x at 516 (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). "Both the voluntariness and comprehension aspects of the waiver inquiry should be examined 'primarily from the perspective of the police,' such that where '[the] police had no reason to believe that [the defendant] misunderstood the warnings, … there is no basis for invalidating [the] Miranda waiver.'" United States v. Al-Cholan, 610 F.3d 945, 954 (6th Cir. 2010) (quoting Garner v. Mitchell, 557 F.3d 257, 263 (6th Cir. 2009)).

## III. ANALYSIS

The Magistrate Judge recommended that Mitchell's Motion be denied. (ECF No. 56.) In doing so, the Magistrate Judge proposed the following conclusions: (1) there was sufficient probable cause in support of the search warrant; (2) even absent sufficient probable cause, the good-faith exception applies; and (3) Mitchell's waiver of his Miranda rights was knowing, voluntary and intelligent. (Id. at PageID 492–98.)

*A. Defendant's Objections to Proposed Findings of Fact*

Mitchell objects to the Magistrate Judge's proposed findings of fact that (1) the three MPD witnesses all testified credibly; (2) the confidential informant ("CI") contacted the detectives to tell them about the activities of Mitchell and his brother; and (3) Detective Kent observed "vehicle traffic consistent with narcotics sales." (ECF No. 58 at PageID 503–04.)

6

### i.   Credibility of the MPD Detectives and Officer

"Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." United States v. Johnson, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011) (quoting United States v. Robinson, No. 1:07-CR-1, 2007 WL 2138635, at *1); see also United States v. Hill, 195 F.3d 258, 264–65 (6th Cir. 1999).

There is nothing in the record that supports questioning the Magistrate Judge's assessment that Detectives Kent and Redding and Officer Ufeu all testified credibly. Mitchell points to apparent inconsistencies in the testimony of each witness in support of his assertion that their testimony was not credible. (ECF No. 58 at PageID 503–04.) But the testimony to which Mitchell cites in arguing that the MPD witnesses did not testify credibly does not support his objection.

First, the timeline to which Detective Redding testified does not "def[y] belief." (ECF No. 58 at PageID 503.) Redding's testimony on re-direct examination clearly establishes that it was possible to get from the MPD office at 51 South Flicker to 1355 Busby, conduct a second search of less than five minutes, and return to 51 South Flicker within about an hour. (Hr'g Tr., ECF No. 53 at PageID 426:13-24, 427:1-12.) And Redding's admission that he filled in the wrong date on the consent to search form does not make his testimony less credible. Redding explained that the incorrect date was a "clerical error" and did not attempt to conceal or minimize this error. (Id. at PageID 387:12.)

Second, Officer Ufeu's testimony that he could not recall what, if anything, he personally recovered during the search and his inability to recall the details of Mitchell's

7

statements is not inconsistent with either his testimony or the testimony of the Detectives. (ECF No. 58 at PageID 503.)  Ufeu testified clearly and repeatedly that he did not recall details regarding either the search at 1355 Busby or Mitchell's statements. (Hr'g Tr., ECF No. 53 at PageID 430–42.)  His lack of recollection does not make his testimony or the testimony of the Detectives less credible.  Ufeu was one of at least 10 people on the search team and seemingly had no involvement with the investigation and Mitchell's subsequent charges past November 9, 2018.  (Id. at 340:1-12.)  His lack of recollection is a reflection of an expected loss of memory over the past two years, not an implication that the events to which Detectives Redding and Kent testified did not occur as they stated.

Third, Detective Kent's testimony regarding the timing of the entry video, which Mitchell describes as "[p]erhaps most troubling," is also not inconsistent.  Mitchell asserts that Kent "admitted on cross-examination that members of the [search] team had damaged a door while searching for residents" and that this admission "was in contradiction to [Kent's] statement that there had been no search before the video began."  (ECF No. 58 at PageID 503.)  But Kent did not testify that the entry video was made before the search team conducted *any* activity in the residence.  Instead, Kent testified that the entry video was made after the residence was secured but prior to the search of the house.  (Hr'g Tr., ECF No. 53 at PageID 294:2-8.)  Kent then testified that the damage to the closet door seen in the entry video was done in the process of securing the residence.  (Id. at PageID 331:22-24, 332:1-14.)  This testimony is entirely consistent.  And finally, Kent did have a "believable explanation" for why he did not mention the second search of 1355 Busby in the record of arrest: he testified that "[n]o additional contraband was recovered, and [he] didn't believe [the second search] contributed to the charges that [they] were filing against Mr. Mitchell."  (Id. at PageID

8

363:19-21.) Detective Kent's testimony was straightforward and consistent, not a selective recollection of events as Mitchell asserts in his Objections.

The Court therefore overrules Mitchell's objection to the Magistrate Judge's finding of fact that the MPD witnesses testified credibly.

### ii.   The Confidential Informant

Mitchell next objects to the finding of fact that "a confidential informant contacted detectives to tell them that Alfonzo Mitchell and his brother, Alonzo Mitchell, were storing and selling narcotics… at 1355 Busby." (ECF No. 58 at PageID 504; see also ECF No. 56 at PageID 486–87.)  This objection is overruled.  Mitchell is correct that Kent did not testify specifically that the CI "had come forward on his own" and that Kent had been working with this CI prior to this investigation.  But the Magistrate Judge's proposed finding of fact at issue does not imply that the CI "voluntarily came forward on his own." (ECF No. 58 at PageID 504.)  The proposed finding of fact, at most, suggests that nobody at MPD knew about Mitchell and his brother and the possibility that they were involved in drug trafficking activities until the CI brought them this information.  That conclusion is consistent with Kent's testimony, in which he responds to a question of how the investigation began by stating, "I received information from a confidential informant that Alonzo and Alfonzo Mitchell were storing and selling narcotics out of their house at 1355 Busby Avenue." (Hr'g Tr., ECF No. 53 at PageID 269:11-16.)

### iii.  Detective Kent's Surveillance

Mitchell's objection to the proposed finding of fact that "Detective Kent observed 'vehicle traffic consistent with narcotics sales'" is also overruled.  Kent testified to "multiple occasions" where he conducted surveillance and "saw vehicles pull into the driveway [, a]n

9

individual [] exit the vehicle, go into the house for a short period of time, and then come back out to the vehicle and leave." (Hr'g Tr., ECF No. 53 at PageID 271:14-18.) He testified that each incident "probably took less than 15 minutes." (Id. at PageID 271:18-21.) Kent also testified that he received "specific training from the organized crime unit about investigations into narcotics trafficking" and had "conducted several short-term narcotics investigations" prior to getting the search warrant in this case. (Id. at PageID 272:20-24.) This experience is sufficient for this Court to credit Kent's testimony that the vehicle traffic he observed at 1355 Busby was consistent with narcotics sales.

*B. Defendant's Objections to Proposed Conclusions of Law*

Mitchell also objects to the Magistrate Judge's proposed conclusions of law that (1) the search warrant was based upon probable cause; (2) the good-faith exception applies in this case; and (3) Mitchell's waiver of his Miranda rights was voluntary, knowing and intelligent. (ECF No. 58 at PageID 505–08.)

    i.    Probable Cause

Mitchell argues that the search warrant in this case was bare bones and left out information necessary for a finding of probable cause. (ECF No. 58 at PageID 505.) This objection is overruled. The warrant included sufficient information for a finding of probable cause. The warrant affidavit stated that the CI "observed marijuana, crack cocaine, and cocaine inside of 1355 Busby Ave, Memphis TN 38127, within the past (5) days." (Exh. 1, ECF No. 30.) Detective Kent established the reliability of the CI by stating that the CI was responsible for two reliability buys, in which the CI engaged in undercover purchases of narcotics to establish the CI's reliability, prior to the Mitchell investigation. (Id.) Finally, Kent stated in the affidavit that he conducted surveillance at 1355 Busby on "multiple

occasions" and "knows from training and experience" that the activity he observed where "multiple vehicles pull into the driveway… one or more of the occupants exit[] the vehicle, enter[] the house, stay[] inside for less than 15 minutes, and then g[e]t back into the vehicles, and [leave]" was "consistent with narcotic sales." (Id.) "Knowledge of illegal activities obtained by law enforcement officers through a confidential informant and sustained by independent surveillance supports a probable cause determination." United States v. Jones, 159 F.3d 969, 974 (6th Cir. 1998). Here, the information provided by the CI was adequately corroborated by Kent's surveillance. See United States v. Stotts, 176 F.3d 880, 885 (6th Cir. 1999) ("A judicial officer may rely on an experienced officer's conclusions based on the nature of the evidence and type of offense.").

    ii.    Good Faith Exception

Even if the information in the warrant was insufficient to support a finding of probable cause, the good-faith exception applies. The affidavit establishes a clear nexus between the illegal activity observed by the CI and the residence at 1355 Busby, and the CI's information was corroborated by Kent's surveillance. As described above, the affidavit contains factual circumstances supporting the Detective Kent's conclusions. It contains more than Kent's mere belief that probable cause existed for the search. White, 874 F.3d at 496. Therefore, Mitchell's objection as to the Magistrate Judge's proposed conclusion of law that the good-faith exception would apply if probable cause is not supported is overruled.

    iii.    Waiver of Miranda Rights

Mitchell also objects to the Magistrate Judge's proposed conclusion of law that Mitchell's waiver of his Miranda Rights was knowing, voluntary and intelligent. He argues

that Mitchell was "arrested, handcuffed, and detained for nearly seven hours without an attorney" and that this was a coercive atmosphere. (ECF No. 58 at PageID 508.)

Mitchell's objection ignores the details of where Mitchell was and what he was doing during those "nearly seven hours" that he was detained. Importantly, Mitchell was not subjected to a custodial interrogation for the entirety of the time he was detained. For about two hours, he was simply detained at his residence while the officers executed the warrant. (Hr'g Tr., ECF No. 53 at PageID 293:5-8, 295:4-8.) After that, there was another approximately two hours during which Mitchell was transported to the MPD office at 51 South Flicker, was advised of his Miranda rights for the first time and waived them in an Advice of Rights form, was transported back to 1355 Busby for the second search, was brought back to 51 South Flicker, and then was advised of his Miranda rights for the second time and waived them in a Rights Waiver form. (Id. at PageID 391:16-22, 393:23-24, 394:1-9, 405:6-8, 408:2-11.) It was not until sometime after 8:38 p.m. the day of the search, over four hours after Mitchell was first detained, that Detective Redding began the verbal interview with Mitchell. (Id. at PageID 395:9-15.) After the verbal interview, Redding and Officer Ufeu (and later Detective Kent) conducted the typed interview with Mitchell, which was when the Defendant Statement was produced. (Id. at PageID 395:16-24.) The Statement was signed and the interview was completed at 10:53 p.m. when Mitchell signed the Statement. (Id. at PageID 401:10-17.)

Ultimately, Mitchell was informed of his Miranda rights and waived them three times. (Hr'g Exh. 9, 11–12.) Although Mitchell was detained for nearly seven hours, the actual period of time during which he was interviewed was only approximately two hours. Detective Kent testified that Mitchell was not questioned prior to being transported to 51 South Flicker

and first being advised of his Miranda rights.  (Hr'g Tr., ECF No. 53 at PageID 336:8-12.) There is no evidence on the record that Mitchell gave any of the MPD officers reason to believe he did not understand his rights.  There is also no evidence of intimidation or coercion.  This Court finds that Mitchell's waiver of his Miranda rights was knowing, voluntary and intelligent and overrules Mitchell's objection to this conclusion of law.

IV.   **CONCLUSION**

For the reasons stated above, Defendant's objections to the Magistrate Judge's Report and Recommendations are **OVERRULED** and Mitchell's Motion to Suppress Evidence is **DENIED**.

**SO ORDERED**, this 16th day of November, 2020.

                                               /s/ Jon P. McCalla
                                             JON P. McCALLA
                                             UNITED STATES DISTRICT JUDGE